All the Justices concurring.

---

THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY v. A. G. RITZ.

1. CATTLE-GUARDS, *Failure to Erect; Measure of Damages.* In an action by the owner of a crop to recover damages against a railway company for failing to construct and maintain proper and sufficient cattle-guards where its railroad passes through the inclosure in which the crop is growing, the plaintiff is entitled not only to compensation for the crop actually destroyed, but also to reasonable compensation for the time and labor necessarily expended in any ordinary and reasonable effort to protect his crop, and to prevent further and additional damages thereto; but he ought not to be allowed compensation beyond the injury or loss that might have been occasioned had no such effort been made.

2. EVIDENCE; *Opinion of Witness.* Upon the question of whether the cattle-guards were proper and sufficient to complete the inclosure and prevent domestic animals crossing the same, the opinions of witnesses are not admissible, but when the facts relating to their construction and condition are shown, the jury are capable of forming a correct judgment regarding their sufficiency.

3. FINDINGS OF JURY; *Interpretation.* Where the findings of a jury are fairly susceptible of two interpretations, that one should be given which makes them concordant with each other, and which supports the general verdict, rather than an interpretation which would overturn and destroy the general verdict.

*Error from Greenwood District Court.*

ACTION by *Ritz* against *The Railway Company,* to recover damages alleged to have been caused by the failure of the defendant to construct and maintain proper cattle-guards. Trial

at the December Term, 1882, and verdict and judgment for plaintiff for $221. *The Company* brings the case here. The opinion states the facts.

*S. S. Kirkpatrick*, for plaintiff in error.

The opinion of the court was delivered by

JOHNSTON, J.: A. G. Ritz brought his action in the district court of Greenwood county against the St. Louis & San Francisco Railway Company, to recover damages which he suffered and were occasioned, as he alleges, by the failure of the railway company to construct and maintain proper cattle-guards where its road entered and left the plaintiff's inclosure. The railroad of the defendant passes through plaintiff's farm where a crop of corn was growing, and he alleges that by reason of the railway company's neglect and refusal to make and maintain proper guards, a large number of cattle and horses entered upon his premises over the defective guards, and ate up and destroyed corn of the value of $175; and he also claims, that by reason of the defendant's neglect in this regard he necessarily expended in an effort to save his crop from destruction the sum of $175, for which he asked judgment.

A trial was had with a jury, resulting in a verdict and judgment for the plaintiff for the sum of $221. The railway company brings the case here, assigning several errors, which will be briefly noticed.

I. It is first urged that the court erred in sustaining an objection to the questions asked T. J. Kelley, a section foreman of the railway company who was engaged upon the section of the railroad passing through plaintiff's land. After showing that he was experienced in railroading and in the building and repairing of cattle-guards, and also that he was acquainted with the cattle-guards in question, the inquiries were made: If in his opinion the cattle-guards in question were properly constructed? Were the cattle-guards constructed in the usual and ordinary way of constructing cattle-guards by railways? And

if it was possible to construct a guard that would prevent breachy stock from crossing it?

. These questions called merely for the opinions of the witness, and we think there was no error in excluding them from the jury. As a general rule, opinions of witnesses are not admissible in evidence. The facts should be stated, and the jury left to draw inferences and form opinions upon the facts. There are exceptions to this rule, as upon a question of skill or science, or where the subject-matter of inquiry is of such a character that jurors not having experience would not be apt to reach a correct judgment without the aid of expert testimony. But we think the case at bar does not come within any of the exceptions. Cattle-guards are in such common use and are so simple in construction, that practical business men of common experience, when given the facts, can, without the aid of opinion, reach a correct conclusion as to whether the guards were proper and sufficient to complete the inclosure. A jury, coming as it does from the body of the people, many of whom are necessarily familiar with the habits of domestic animals, and with what is necessary to restrain them, is probably more capable of determining whether a cattle-guard is proper and sufficient to prevent stock from crossing it than the man who is experienced only in building cattle-guards.

The supreme court of New York has passed upon this question, and held that the inquiry, whether a cattle-guard on a railroad is properly constructed, is not the subject of expert testimony, but that when the manner of construction is shown, the jury is competent to determine whether it is suitable and sufficient, without opinion evidence. In deciding the question, the court say:

"That when the manner of its construction was shown, the jury was competent to speak of its fitness for use, as was any person engaged in its construction, or in the construction of such guards, however numerous. It does not require experience in the construction of cattle-guards to know that if the timbers composing the superstructure are so near each other that the feet of horses or cows will not pass between them,

the guard furnishes no obstruction to cattle desiring to pass over it. If the opening between the timbers is only two inches, and the animal's foot is five inches in length, it can pass almost as easily as if the timbers were in actual contact. No amount of opinions could justify the finding that a cattle-guard so constructed was fit for the use for which it was constructed, however skillful and competent the witnesses might be." (*Swartout v. Rld. Co.*, 7 Hun, 571; Rogers on Expert Testimony, 10; Lawson on Expert and Opinion Evidence, rule 24; *St. L. & S. F. Rly. Co. v. Edwards*, 26 Kas. 72; *Enright v. Railroad Co.*, 33 Cal. 236.)

The facts in regard to the manner in which the guards were constructed, and in respect to whether they served to complete the inclosure and obstruct cattle from passing within, were not only available, but were fully offered in evidence. The testimony tended to show that the pits underneath the guards were only from 14 to 16 inches deep, and some of the timbers across the pits were so close together that the foot of a horse or cow could not pass between them, and that cattle crossed over them with but little difficulty. Altogether, the testimony abundantly shows that they were insufficient.

II. It is next urged as error, that the jury assessed damages against the railway company for the injury done to plaintiff's corn by stock which entered his inclosure at points other than over the alleged defective cattle-guards. Of course the company cannot be held liable in this action beyond the damage caused by its failure to construct and maintain proper cattle-guards.. It is true there was some testimony to the effect that stock once gained an entrance into plaintiff's corn field through the fence; and the jury, in answer to special questions, say that 575 bushels of corn were destroyed by cattle and other animals on the plaintiff's premises, and that the damages sustained by plaintiff by reason of this injury to his corn was $161. In their general verdict they evidently allowed the plaintiff this amount for damages done to the corn by the railway company. The special questions immediately preceding these, however, related to stock which came into plaintiff's inclosure over the defective cattle-guards, and obviously the corn referred to by the

jury in their answers was that which was destroyed by the cattle that crossed over the defective guards. The jury had been specially charged that the railway company was not liable for injury done by cattle crossing at other points. The findings, when read together, will fairly bear the interpretation that the jury took into account and computed in their allowance to the plaintiff, only the injury done to the plaintiff's corn by cattle crossing over the cattle-guards; and where a finding of fact made by the jury is susceptible of two interpretations, that one should be given it which would make it consistent with the other findings and with the general verdict, rather than [an interpretation which would overturn and destroy the general verdict. (*Simpson v. Greeley*, 8 Kas. 586.)

III. It is finally urged that the court erred in telling the jury that in addition to the value of the corn destroyed, the owner of the crop can recover a reasonable compensation for the time and labor necessarily expended in trying to protect his crops from injury by guarding the opening in the inclosure caused by the defective cattle-guards, and erred in including such compensation in the judgment rendered. This rule was enunciated by the court in the case of the *St. L. & S. F. Rly. Co. v. Sharp*, 27 Kas. 134, and of its correctness and justness we have no question. In that case it was said: "The owner of the crops, upon ascertaining that injuries were being done thereto by the cattle and other animals which had entered at the places where the railway company had failed to erect suitable cattle-guards, was bound to use proper diligence to prevent further injuries to his crops." This duty being enjoined upon the plaintiff, the expense necessarily incurred in its performance is the natural and direct consequence of the neglect of the railroad company, and for which it should be held liable. Counsel say that under this rule there would be no limit to the expense which the owner of the crop might incur in an effort to protect his crops, and that the expense might even be made to exceed the value of the crop, or the injury which could have been done had not the effort to protect the crop been made. He is only entitled to reasonable

compensation for the time and labor *necessarily* expended in a reasonable effort to protect his crops, and would not be entitled to compensation beyond the damage which might be done by reason of the railway company's neglect.    For instance, if the extent of the injury which could be done to his property by the failure of the railway company to maintain proper cattle-guards did not exceed $500, he could not recover for time and labor spent in protecting such property an amount exceeding that sum.    The rule requiring the owner of the crop to use an ordinary and reasonable effort to protect his crop, and giving him compensation therefor, must generally operate beneficially in the interests of the railway company whose neglect makes such expense necessary.    The effort must generally have the effect of preventing greater injury and loss, and to that extent reduces the amount for which the company would be liable.

In Iowa, under a like statute, the supreme court has well said —

"That there was no error in an instruction given to the effect that a plaintiff might recover as damages a reasonable compensation for time and labor necessarily expended in trying to save his crops from destruction.    If he, in the exercise of ordinary efforts to prevent the destruction of his crops because of defendant's fault, expended money or labor, he should be compensated therefor.    This is one of the natural and ordinary consequences of the neglect of the appellant to comply with the statutory requirement to put in the cattle-guard, and if plaintiff is not allowed to recover for this, the law fails to compensate him fully for the injury inflicted, while it required at his hands the performance of this duty.    So, also, if his cattle were *necessarily* injured because of the failure of defendant to put in the cattle-guard, the plaintiff should upon the same principle of compensation be allowed to recover therefor." (*Smith v. C. C. & D. R. R. Co.*, 38 Iowa, 518.)

The authorities cited by counsel for the railway company contain nothing inconsistent with this rule, or the views herein expressed.    Seeing no error in the record, the judgment of the court below must be affirmed.

All the Justices concurring.